The next case is People of the State of Illinois v. William Jordan for the appellant, Mr. McNeil, for the appellee, Mr. Whitting. You may proceed. You don't often get to stand up first. I know. It felt weird, even the angle of looking felt weird. May it please the court, counsel. The facts of this case are pretty straightforward. The officers, Vandal and Coffman, testified pretty consistently with the video recording of the traffic stop, or one of the traffic stops. That's one big point here. The fact remains that this was a video that showed two officers approach the defendant who was sitting in the driver's seat of a parked car. They were responding to a report of a suspicious vehicle. The officers approached behind him, so therefore he would not be unable to drive away if he wanted to. He wasn't blocked into a parking spot or anything like that. Was this in a parking lot? It wasn't real clear. No, it was on the side of the street. So it was on the side of the street, right? Yes. Okay. Yeah, that's what the video depicted. No overhead lights, no weapons drawn. In such a way, and I don't think it's an issue here, but just for my clarification, if there hypothetically was probable cause, a warrant wouldn't even be needed then, because the car's capable of driving away under that particular exception to the warrant requirement. I know that's not the issue. I just want to make sure I understand how this worked. Well, I want to get into the difference between the reasonable suspicion and probable cause. I understand that. Here, the Officer Bale approached the defendant from the driver's side, knocked on the window, and the defendant involuntarily opens the door. For a couple minutes, the defendant answers questions that Bale asks rather evasively and gives a sufficient reason as to why he's there. He was waiting for a ride, but he didn't have a license, so he begs the question why he would be waiting in the driver's seat when obviously somebody else would have to get into that seat to drive him away. He didn't live near the area and gave no reason as to why he was there. Meanwhile, Kaufman approached the other side, the passenger side of the car, and Kaufman observed a small ziplock baggie in the floorboard of the car. It was partially obstructed from the floor mat. At that point, Kaufman told Bale to order the defendant out of the car. Kaufman admits at that point the defendant was free to leave. The trial court found that this was initially a consensual encounter up until the point where the defendant was ordered out of the car. At that point, the trial court still held that there was not the requisite reasonable suspicion to detain the defendant or to search his car. This was error. The trial court did the exact thing you're not supposed to do in this analysis, and that is separate each individual circumstance instead of looking at the totality of the circumstances to establish the requisite reasonable suspicion. Here, and I cite to you, Kupel v. Hilt in my brief, mainly because it's almost an identical fact pattern. It's a Second District case. In that case, in fact, it was a traffic stop, not a report of a suspicious vehicle. It was a traffic stop in that case. The officer sees a corner of a small plastic baggie in the floorboard of the car and orders the defendant out of the car to search the car. The baggie's empty, but finds crack cocaine somewhere else in the car. He testifies in his training and experience, cocaine is regularly packaged like this, and that's what gave him the suspicion to search the vehicle. The Hilt court reversed the trial court's suppression of the evidence and found not only was there a reasonable suspicion, there was probable cause at that point to search the car. If this court is convinced with Kupel v. Hilt that we don't even need to get into the canine sniff because the police have probable cause at that point to search the car. If they play it safe in this case, they wait a short duration, I think 10 minutes, canine-armed kids, then of course they do have the record of probable cause and then search the car. The baggie was empty, but they find methamphetamine somewhere else in the car. Kupel v. Hilt had the exact same circumstances of suspicion. The court said presence of unique container, the officer's previous experience with such containers, and the fact that the stop occurred in the early morning hours in an area known for drug transactions provided the officers with probable cause to search the defendant's car. If this court is not entirely convinced by Hilt, in this case the officers only need a reasonable suspicion because they did not search the car until after the canine sniff, so the issue becomes did they have the reasonable suspicion required to detain the defendant for that short amount of time until the canine officer arrives. They clearly did. Again, if we're looking at pieces worth of silver, the other unique container cases that go all the way back to the 10-quart brown opinion, that dealt with the balloons. An officer's testimony that this was a common way to package heroin. And then Jones, another second district case, was a small manila envelope, and the officer's training and experience testimony that this was a way that marijuana was often distributed. In this case, we have Officer Kaufman's experience and trained opinion, not opinion, testimony that in his years of experience this was a common package for the illegal drug trade, and in fact he had never seen a baggie like this used for any other purpose. The defense counsel tried to catch him up apparently by complimenting his suit and saying, did you ever get extra buttons in your suit in baggies like this? And he denied it. But that is apparently what the trial court focused on in finding that this baggie had no illicit purposes, even though there was nothing in the record to establish this baggie had no illicit purposes. In fact, it was the exact opposite. Officer Kaufman testified that he had only seen this baggie used with illicit purposes in Duval, the illegal drug trade. The trial court also changed course rather strangely, and it was pretty clear that when Officer Kaufman first testified about this baggie that the trial court had no idea of the contents or the form of the bag. He had Officer Kaufman explain it further, and then still said, oh, okay, I guess I learned something new every day. So by that point, it seems the trial court had no idea about these baggies, but then still relied on the fact that apparently buttons came in these, extra buttons in suits came in these in giving its ultimate conclusion. Pursuant to Hill and the suspicious packaging cases, not only was there reasonable suspicion here, but there was probable cause to search the defendant's car at the time that the suspicious packaging was observed due to the high crime area. And I would also note that it seemed from the record in the context of the trial court's comments that they did know the neighborhood that this was in and that it was indeed a high crime area. They mentioned that they know the neighborhood and then say, of course, if it's late at night in this neighborhood, the officers did have a right to respond to this suspicious vehicle encounter and that it was consensual up until the point of observing the packaging in order to get it out of the car. So if there are no more questions, I would ask this court to reverse. I see none. Thank you. Thanks. Your Honor, this will be a case of court. Cancel. My name is Edward Wichert. I'm with the Office of the State Appellant Defender. I represent the appellee, Mr. Jordan, on this appeal. Regarding the seizure issue, the parties in the trial court all agreed that Mr. Jordan was seized by officers confident about during the investigatory stop. The question, however, is when did that seizure occur? Under the entirety of the circumstances, that seizure occurred before the officers confident about or Mr. Jordan from the vehicle after observing that small plastic bag on the passenger side floor that was later determined to be empty. Looking at this from Mr. Jordan's position as we must, a reasonable person in his position would not have felt free to leave or otherwise terminate that encounter. And I think in this analysis, this court's decision to keep him in the alley is very instructive. In Allen, this court found that the offender was seized after officers received information from an informant that a vehicle was containing drugs. They observed that the vehicle parked directly behind an apartment complex. The officers then parked perpendicularly behind the suspect's vehicle and approached from either side and began engaging in questioning. They also illuminated their spotlight on the vehicle, which also occurred here. This court found that a reasonable person in the defendant's position would not have felt that he had the freedom just to keep in contact with the police because the encounter was akin to a traffic stop. And that is, in essence, what occurred here. Mr. Jordan was alone in his vehicle when he was approached by two officers flanking his position. They were in uniform. They were armed. After knocking on the door, officers called him to, excuse me, physically held onto both the vehicle and the car door, physically preventing it from being closed. In Allen, where were the squat cars? It's in relation to the defendant's vehicle. In Allen, there is testimony that the actual car was directly behind the apartment complex and then the car was parked perpendicular to it. And so it would indicate that there was an apartment complex followed by the suspect's car and then the police cars behind it. So the squat cars had the defendant, in that case, blocked in with their squat cars, right? From the fact pattern, it would seem that the squat vehicles were behind. Well, I'm just reading from Allen itself. Two squat cars blocked the vehicle in which the defendant sat. And that is exactly the phrasing. But in the actual fact pattern, there's testimony that it was directly behind the apartment complex. So that would also indicate that perhaps the officers' vehicles were still behind it but blocking it. And either way, it was, the important part of Allen was that the vehicle physically could not be moved. It couldn't be moved here either, I guess. It couldn't be moved here. Exactly, it could not be moved here. That's because he didn't have shoes. It wasn't his car. He didn't have a coat. And it was December. And it was particularly important, too, that he also was an unlicensed driver, so he could not drive the vehicle away. And then also, Officer Bow was physically holding onto his vehicle, so whenever he'd drive away, he would risk injuring her, which wouldn't be reasonable. And the... But he wasn't restrained by her. He was restrained by the fact that he can't lawfully drive. Both by the fact that he could not unlawfully drive and by the fact that she's holding onto his vehicle. And he's probably not going to get out the passenger side because he doesn't have any shoes. Yes, Your Honor. And both... And also because Coffman is standing directly in front of the passenger side, because he couldn't terminate the encounter by either shutting the door, because she was holding onto it, or by driving away because he's unlicensed, or even by stating for them to go away, because they specifically told... So what would be permissible for a police officer to do if he knows, and some people say, all of Macon County or all of Decatur is a high-crime area, but it is a high-crime area from the perspective of the police officers. And the call they receive is not just the car is suspicious because it's sitting there and it's being turned on and off, which could just be for war, again, because he doesn't have any shoes or a coat. People are coming and going from the car. And they approach the car, and this guy says, you know, I'm waiting for somebody, I'm waiting for a ride. I'm waiting for somebody to get here. And he doesn't say who it is or whose car it is, or why he's there, or he doesn't really want to get out of the car. He's being somewhat obstructive in what starts as a consensual encounter, but does become a seizure fairly quickly. And then somebody sees this baggie. What are the police supposed to do? Just turn around, walk back to their squad car, and say, oh, he's okay. And, Your Honor, I would argue that even observing that small plastic bag there still is a reasonable suspicion in those circumstances because unlike the cases the state sites, there was no modification, especially Hill, there was no modification to that plastic bag that would lead it to the drug trade. In Hill, it was actually the corner of a plastic bag that had been knotted. In other words, that is closely linked to the drug trade. And here was no modification distinctive enough to announce that the plastic bag was no longer being used for its design purposes, but instead had been used for contraband or in some manner linked to contraband. Well, what did the police officer say when he saw it? How did the police officer describe it? The bag. The bag. He did describe it as a small plastic bag, one inch by one inch, and he did state that in his experience it had only been used for, I guess, used in single-sale contacts. But I would argue the trial court here didn't accept that testimony. The trial court here apparently doesn't know that that's the case. The trial court doesn't have any experience out in the street. But I would argue that the trial court not only listened to his testimony, not only did the cross-examination in the manner and tenor of that testimony, but also Officer Kaufman's own actions were inconsistent with that it's only used for single-sale drug use. What if he said it could be used for single-sale drug use, and I think I've seen it used that way before? And if it holds buttons, it usually isn't under the... I mean, I've got some like that that hold buttons, that have held buttons. I don't keep them under the floor mat of my car. Sure, you're all right. But if this is only associated with drug use, Officer Kaufman did not seize that bag for evidence. He did not send it to the... No, he had reasonable suspicion. Therefore, he called Cain, right? So what's wrong with that? Well, if there is reasonable suspicion, the argument here is that there's not reasonable suspicion. And then I also make the argument that, in that case, the argument was made as below that the delay when they pulled him from the vehicle and he wasn't wearing shoes or a coat was also unreasonable, even though it was of a short duration. And then, obviously, when the dog was... I mean, that's a different story, but the argument here is that before the next hour, he must have had a seizure. Sounds like to me that he had reasonable suspicion, probably probable cause, that it was criminal trespass to a motor vehicle. What do you think about that? Your Honor, that's not what the officer testifies to. He specifically stated he had reasonable suspicion because of the contents of that plastic bag. So the officers were concerned about... When they seized him, they weren't concerned about any potential traffic violation or anything else. They were specifically concerned with narcotics in that small plastic bag. But it is odd, isn't it, to find somebody sitting in a car that's not theirs, that they can't drive away, and given the phone call that's preceded or the traffic or the alert, that people have come and gone from the car, and it's been there longer than one would think unless it was to be permanently parked there. First point on that, to that point, Your Honor, is I don't believe the officers actually received the information that was in the complaint. Both officers testified they only received what was... And so they couldn't have considered that people were coming from the car. The officers testified that they only received the information that was on the dispatch notes, which had said that the car had been occupied twice and that it was shut off. And although the state does argue that Officer Kaufman speculated that there may have been more information in the radio logs, there's no... He specifically testified he believed that he received information only through a computer and didn't actually state in the logs any more information in the radio calls. So somebody said there were people coming and going, but that wasn't known to the officers at that point. The only thing they knew was, well, it's contained in the defendant's exhibit, which was the notes. And I would argue regarding the other facts outside of the small plastic bag, it's not clear here that the trial court credited that. The trial court specifically found that it did not believe those other facts. And now whether or not it actually found those facts, it at the very least did not find them compelling and that's correct here. Regarding that it was late at night, the fact that the defendant was there, it's a public streaming unit, he's not precluded from being there. The lateness of the hour really only matters in the context of an area that the defendant's not allowed to be in. Whether it's a high-crime area, the officers here were not able to provide any specific information. And so far as Officer Val testified, just generally that people were called out there, she was never called out there herself. She also went specifically at stating that she could not provide any statistics. Now, Officer Kaufman did testify that there had been narcotics sales there in the past, but he didn't indicate whether or not that was to that block, but not whether that was a specific resident or to the street. So there would be a basis for the trial court rejecting that. And also the officers themselves gave these other factors very little weight. They themselves testified that they didn't find that there was any reason to detain them until they saw that small plastic bag. So the focus here really is on that small plastic bag. Okay. Regarding the state's reliance on people in the jails, in that case, although it was a small envelope holder, the defendant actually covered it with his shoe. And the fact that he covered it with his shoe as it fell to the ground would indicate that it was no longer being used for small purposes and instead was being used for less activity. The Supreme Court's case in Texas v. Brown is also very different. There, not only did the officer see the balloon that was knotted at the tip, which would indicate that something was in it, he also observed loose powder and a bag of balloons in the glove box, which would indicate that the defendant was placing the powder into the balloon itself. And then there's no indication here based on where the small plastic bag was found that contained anything much less contraband. In the end, Mr. Jordan was seized without reasonable suspicion to do so and would ask his court to affirm the trial court's ruling. If there are no other questions, thank you for your time. Thank you, counsel. Mr. Butler? Defendant understandably makes the same mistake that the trial court did and singled out every single circumstance of suspicion instead of looking at the totality of the circumstances. As for the high crime area, I don't think there is any authority decided that the police are required to bring crime statistics into a motion to suppress hearing to testify that it's a high crime area that they rely on the training and experience. And moreover, I don't think that was an dispute here. I think the trial court commented that it knew the neighborhood and that it seemed like in context of their comments it was a high crime area. As for the baggie, there was testimony from a trained officer that this type of size of baggie was indeed only exclusively used for the illegal drug trade. That's evidence in and of itself. And again, as far as it being... having purposes outside of the illegal drug trade, there was nothing to suggest that besides apparently the trial court's only general knowledge that it would have used to store bottles. I'm sorry. No, go ahead. Are you sure? Yes, please. Okay. The trial court did make an interesting comment. I learn something new every day. Correct. Should... Or could it be argued that we can construe that as the trial court saying that the officer didn't have a lot of credibility with the judge? I wouldn't say that because in the factual findings the trial court goes out of its way to say I think there's no bad faith on the part of these officers. I think they were certainly acting within good faith. They separated each circumstance. That's a curious statement. What do you think the court made of that? I think the court genuinely didn't know about the size of this kind of Ziploc baggie. So you think that there was no sarcasm there? It was just the court making the comment wow, I've learned something new today. Especially right before that the trial court specifically interjected that give more specifics about what the officer was talking about. Okay. I viewed it as the court being derisive but maybe I viewed it incorrectly. And I mean maybe... And of course the trial court might have gotten its memory job that these reduces to a button ensues later on. But it seemed weird in context to me for the trial court to make a 180 like that. But we're only dealing with the cold record. So as far as the video, it was October, not December. And if I remember correctly I don't think the officers were wearing coats in the video. I think they were wearing short-sleeved shirts as well. During the 10 minute delay the defendant didn't say can I wait in the car or anything like that. But it was freezing. The defendant did open the door though. The defendant voluntarily opened the door. Right, and that's why the officer's eye understood it. You could talk but you kind of have to get in the area where the door would close. Yeah, it wasn't a physical restraint as in he was trying to close the door or holding onto the car. It was more leaning to talk to the person. And it's important to listen to the context. Officer Vail never makes one command of the defendant. He just asks him the general questions. He makes the statement I have a right to come and ask you these questions which is true. But the fact, and Allen is distinguishable because it was a parking lot. It was an apartment parking lot where the police cars were parked behind the defendant. He physically couldn't drive his car away. This was the side of the street. And the officers don't know that the defendant didn't have a license either. They didn't have shoes or a coat. They parked behind the person like a routine traffic stop. Although, again, I have to the fact remains the officers knew this was a reported suspicious vehicle. How much content they had is debatable. But the fact remains that would arouse my suspicions just the report of a suspicious vehicle that they're responding to. I think that's more than just pulling somebody over for speeding as far as reasonable suspicion is developed. And this court has held, and I cited in my brief, that consensual encounters are fluid and can dynamically change into a reasonable suspicion or problem to cause situation based on the way that the traffic stop goes. And I think this was a textbook consensual encounter that turned into the right was a reasonable suspicion and problem to cause. Justice Harris, I interrupted you. I hope I didn't make you lose your train of thought a bit. It wasn't much of a train. It was in regards to the baggie. Just going back to that, just simply because an item can also have an innocent use. If the police officers are able to identify it as having a purpose that's specific to an illegal activity, that can be supportive of their reasonable suspicion, right? Of course. In their training and experience, if I can finish, what if there was a mirror and a razor and some white powder? I mean, I guess there would be an innocent use for that somehow conjured up too. But it doesn't, in a police officer training experience, comes into play in those situations. If there are no more questions, thank you. We'll take this matter under advisement.